**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| JUDY HUNTER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BERKSHIRE HATHAWAY INC., | ) | No. 4:14-CV-663Y |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND RELATED RELIEF**

# Table of Contents

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................ 3

        A.      Procedural History ................................................................................ 3

        B.      Investigation and Analysis .................................................................... 4

        C.      Discovery ............................................................................................... 5

        D.      Mediation ............................................................................................... 6

III.    OVERVIEW OF SETTLEMENT TERMS ...................................................... 7

        A.      Proposed Settlement Classes .................................................................. 7

        B.      Settlement Consideration to the Classes ............................................... 7

        C.      Releases .................................................................................................. 8

        D.      Class Notice ............................................................................................ 8

IV.     ATTORNEY'S FEES AND EXPENSES ......................................................... 9

V.      ARGUMENT ..................................................................................................... 9

        A.      The Class Claims Should Be Reinstated Pursuant to Defendant's
                Written Consent ...................................................................................... 9

        B.      The Court Should Grant Preliminary Approval .................................... 10

                1.      The Settlement Satisfies the *Reed v. General Motors*
                        Factors ........................................................................................ 10

                        a.      No evidence of fraud or collusion ................................... 11

                        b.      Complexity, expense and duration ................................... 11

                        c.      Stage of litigation and available discovery ..................... 12

                        d.      Probability of prevailing on the merits ........................... 12

i

e.      Range of possible recovery and certainty of damages................................................................. 13

f.      Opinions of counsel and class representatives. ........................... 15

2.      The Proposed Settlement Classes Satisfy the Requirements for Certification Pursuant to Rule 23 of the Federal Rules of Civil Procedure .................................................................... 15

a.      Rule 23(a)(1): The Members of the Classes Are So Numerous That Joinder of All Parties Is Impracticable.................................................................. 16

b.      Rule 23(a)(2): Common Questions of Law and Fact Apply to the Classes.................................................... 17

c.      Rule 23(a)(3):  Plaintiffs' Claims Are Typical of the Classes.................................................................... 17

d.      Rule 23(a)(4):  Plaintiffs Will Adequately Protect the Interests of All Class Members. ........................... 18

3.      The Classes Satisfy the Requirements of Rule 23(b)(1) and (b)(2) .................................................................... 19

a.      Rule 23(b)(1)(B):  Individual Actions Would Create Inconsistent Adjudications or Be Dispositive of the Interests of Absent Members ...................................... 19

b.      Rule 23(b)(2):  Defendant Has Acted on Grounds Generally Applicable to the Classes and Relief for the Classes as a Whole is Appropriate ....................... 20

C.      Plaintiffs Should Be Appointed As Class Representatives ............................... 21

D.      Keller Rohrback Should Be Appointed As Class Counsel. ............................... 21

VI.      PROPOSED CLASS NOTICE .................................................................. 23

VII.      PROPOSED FINAL HEARING SCHEDULE ............................................ 25

VIII.      CONCLUSION.................................................................. 25

**Cases**

*Ayers v. Thompson*,
   358 F.3d 356 (5th Cir. 2004) ................................................................12

*Billitteri v. Sec. Am., Inc.*,
   No. 3:09- 01568, 2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) ......................................11, 12

*Cottillion v. United Ref. Co.*,
   No. 09-140, 2013 WL 5936368 (W.D. Pa. Nov. 5, 2013).....................................................19

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) .................................................................10, 13, 15

*Del Rosario v. King & Prince Seafood Corp.*,
   Nos. 204-036, 205-044, 2009 WL 10674175 (S.D. Ga. March. 3, 2009) ..............................20

*Duqum v. Scottrade, Inc.*,
   No. 4:15-1537, 2016 WL 1700427 (E.D. Mo. Apr. 28, 2016) ................................................22

*Funeral Consumers All., Inc. v. Serv. Corp. Int'l*,
   695 F.3d 330 (5th Cir. 2012) .................................................................16

*Glover v. Woodbolt Distribution, Ltd.*,
   No. H-12-2191, 2012 WL 5456361 (S.D. Tex. Nov. 7, 2012)................................................10

*Gonzales v. Cassidy*,
   474 F.2d 67 (5th Cir. 1973) .................................................................18

*Hirt v. Equitable Ret. Plan for Emps*,
   450 F. Supp. 2d 331 (S.D.N.Y. 2006)......................................................................20

*Horton v. Goose Creek Indep. Sch. Dist.*,
   690 F.2d 470 (5th Cir.1982), *cert. denied*, 463 U.S. 1207 (1983)...........................................18

*Hunter v. Berkshire Hathaway Inc.*,
   829 F.3d 357 (5th Cir. 2016) .................................................................3

*In re 2014 Radioshack Erisa Litig.*,
   No. 4:14- 00959, 2016 WL 6561597 (N.D. Tex. Jan. 25, 2016) (O'Connor, J.)....................24

*In re Checking Account Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) .................................................................15

*In re OCA, Inc. Sec. and Derivative Litig.*,
   No. 05¬2165, 2008 WL 4681369 (E.D. La. Oct. 17, 2008) .....................................................10

*Jenkins v. Raymark Indus., Inc.*,
   782 F.2d 468 (5th Cir. 1986) .................................................................17

*Lightbourn v. Cty. of El Paso*,
118 F.3d 421 (5th Cir. 1997) ................................................................17

*Lyons v. Ga-Pac. Corp. Salaried Emps. Ret. Plan*,
221 F.3d 1235 (11th Cir. 2000) ............................................................19

*Maher v. Zapata Corp.*,
714 F.2d 436 (5th Cir. 1983) ................................................................11

*Mertens v. Hewitt Associates*,
508 U.S. 248 (1993).............................................................................11

*Miller v. Republic Nat'l Life Ins. Co.*,
559 F.2d 426 (5th Cir. 1977) ................................................................24

*Mullen v. Treasure Chest Casino, LLC*,
186 F.3d 620 (5th Cir. 1999) ..........................................................16, 18

*Newby v. Enron Corp.*,
394 F.3d 296 (5th Cir. 2004) ................................................................10

*Pettway v. American Cast Iron Pipe Co.*,
576 F.2d 1157 (5th Cir. 1978) ..............................................................15

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985).............................................................................23

*Purdie v. Ace Cash Express, Inc.*,
No. 301-1754, 2003 WL 22976611 (N.D. Tex. Dec. 11, 2003) .......................11, 15

*Reed v. Gen. Motors Corp.*,
703 F.2d 170 (5th Cir. 1983) ...............................................10, 11, 13, 15

*Shipes v. Trinity Indus.*,
987 F.2d 311 (5th Cir.1993) ..................................................................17

*Slipchenko v. Brunel Energy*,
No. 11–1465, 2015 WL 338358 (S.D. Tex. Jan. 23, 2015) ..............................15, 24

*Stott v. Capital Fin. Services, Inc.*,
277 F.R.D. 316 (N.D. Tex. 2011) ..........................................................15

*Turner v. Murphy Oil USA, Inc.*,
472 F. Supp. 2d 830 (E.D. La. 2007)......................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)..............................................................................17

*Watson v. Shell Oil Co.*,
  979 F.2d 1014 (5th Cir. 1992) ..................................................................16

**Statutes**

Employee Retirement Income Security Act of 1974 ..................................................1

ERISA ................................................................................................................... *passim*

ERISA §502(a)(3) ...............................................................................................1, 19, 20

**Rules**

Fed. R. Civ. P. 15(a)(2) ...............................................................................................9

Fed. R. Civ. P. 23 ..................................................................................................15, 24

Fed. R. Civ. P. 23(a) .......................................................................................... *passim*

Fed. R. Civ. P. 23(a)(1) ..............................................................................................16

Fed. R. Civ. P. 23(a)(2) ..............................................................................................17

Fed R. Civ. P. 23(a)(3) ...............................................................................................17

Fed R. Civ. P. 23(a)(4) ..........................................................................................18, 19

Fed. R. Civ. P. 23(b) ....................................................................................................4

Fed. R. Civ. P. 23(b)(1) .................................................................................9, 15, 16, 19

Fed. R. Civ. P. 23(b)(1)(B) ..........................................................................................19

Fed. R. Civ. P. 23(b)(2) ...............................................................................9, 16, 19, 20

Fed. R. Civ. P. 23(c)(1)(B) ..........................................................................................15

Fed. R. Civ. P. 23(c)(2)(B) ..........................................................................................23

Fed. R. Civ. P. 23(e)(1) ...............................................................................................23

Fed. R. Civ. P. 23(g) .............................................................................................20, 22, 23

Fed. R. Civ. P. 23(g)(1)(A) ..........................................................................................21

Fed R. Civ. P. 23(g)(3) ................................................................................................21

Fed. R. Civ. P. 26(a) .....................................................................................................5

**Other Authorities**

*Manual for Complex Litigation* (Fourth) § 21.632 (2004) ........................................................10, 21

1 *Newberg on Class Actions* § 3.05 (2d ed. 1985).........................................................................16

*Praise from the Courts*, http://www.krcomplexlit.com/praise-from-the-courts/
     (last visited Dec. 3, 2019) ........................................................................................................19

Plaintiffs Judy Hunter, Anita Gray, and Bobby Lynn Allen (collectively, "Plaintiffs") submit this Memorandum in support of their Motion for Preliminary Approval of their Class Action Settlement ("Preliminary Motion") with Defendant Berkshire Hathaway Inc. ("Defendant" or "Berkshire"), and for related relief, including reinstatement of the class allegations in their Amended Complaint.  A copy of the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") is included as Exhibit 1 to Plaintiffs' Appendix in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Related Relief ("Appendix" or "App'x"), filed concurrently herewith.

## I.      INTRODUCTION

After five years of litigation in district and appellate courts, Plaintiffs and Defendant have reached a settlement of all issues in this case with an estimated aggregate value in excess of Ten Million Dollars ($10,000,000).  Although this case has not been proceeding as a class action since January, 2019,[1] in order to address the interests of absent parties, Plaintiffs and Defendant have agreed to reinstate the class action allegations of the Amended Complaint ("Complaint," ECF No. 50) and seek approval of their settlement under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23.

The Complaint alleges that, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA") and the terms of the Acme Brick Company Pension Plan (the "Pension Plan") and the Acme Brick Company 401(k) Retirement and Savings Plan (the "401(k) Plan") (together the "Plans"), Berkshire caused its wholly-owned subsidiary Acme Building Brands, Inc. ("Acme") to freeze benefit accruals for all Pension Plan participants beginning on October 4, 2014, and caused Acme to cut in half the employer's matching contribution for 401(k) Plan participants for the years 2010 through 2013.

---

[1] In its Order of January 23, 2019, ECF No. 110, the Court granted Plaintiffs' Motion to Proceed With Plaintiffs' Claims Brought Under ERISA §502(a)(3) Without Class Certification (ECF No. 93), but reserved for later determination how to proceed in the event of settlement.

The Settlement, reached after intensive negotiations through a private mediator, represents an excellent result for the two proposed Settlement Classes of participants and beneficiaries of the Plans.  The Settlement provides for the certification of a Pension Plan Settlement Class, consisting of all participants and former participants in the Pension Plan who were employed by Acme on October 4, 2014, together with their respective beneficiaries; and a 401(k) Plan Settlement Class, consisting of all participants and former participants in the 401(k) Plan who contributed to an account with the 401(k) Plan at any time between January 1, 2010 and December 31, 2013 (except for, as explained below, certain participants whose employer match is set by a collective bargaining agreement), together with their respective beneficiaries.

For the Pension Plan Settlement Class, the Settlement provides for extending the last date for benefit accruals from October 4, 2014 to July 15, 2017, for a total extension of two years and nine months, and adjusting the accrued benefit of each Pension Plan Class Member consistent with the additional period during which benefits could accrue.

For the 401(k) Plan Settlement Class, the Settlement provides for the distribution of cash in the amount of Seven Hundred Fifty Thousand Dollars ($750,000) less any case contribution awards granted by the Court.  The cash will be allocated proportionally among the members of the 401(k) Settlement Class, based on the employer matching contributions made to the 401(k) Plan accounts of 401(k) Plan Settlement Class members during 2010-2013.

The Settlement is fair, reasonable, and adequate.  It was negotiated at arms' length over three months, with the assistance of Robert Meyer, a nationally recognized mediator with extensive ERISA experience; it provides significant relief to all Class members, in the form of additional accrued pension benefits and/or a share of approximately $750,000 in cash; the allocation plan is simple and automatic, and does not require any Class members to file claims; the release is narrowly tailored to release only claims related to this litigation; the notice of settlement to be provided to Class members provides detailed information and will be

distributed, at Defendant's expense, in a manner that will maximize the information reaching the largest number of Class members; and Class members will have a full and meaningful opportunity to object and to appear at the final fairness hearing on approval of the Settlement.

## II.     BACKGROUND

### A.     Procedural History

On August 15, 2014, Plaintiffs filed a putative class action complaint in this Court against Acme and Berkshire, alleging violations of ERISA and the terms of the Plans.  ECF 1.  Plaintiffs alleged that, pursuant to the terms of an Agreement and Plan of Merger dated as of June 19, 2000, under which Berkshire acquired Acme[2] (the "Merger Agreement"), Defendants had impermissibly frozen benefit accruals under the Pension Plan and reduced the employer's matching contribution under the 401(k) Plan.  On August 5, 2015, the Court granted Defendants' motion and dismissed Plaintiffs' claims.  ECF 36.  Plaintiffs timely appealed to the Fifth Circuit Court of Appeals.  ECF 38.  After full briefing and oral argument in New Orleans, the Fifth Circuit held that while Plaintiffs had adequately alleged that the Merger Agreement prohibited Berkshire from causing Acme to institute the freeze or reduce the employer match, the Merger Agreement did not prohibit Acme from taking those actions on its own.  *Hunter v. Berkshire Hathaway Inc.*, 829 F.3d 357 (5th Cir. 2016).  The Fifth Circuit affirmed the dismissal of claims against Acme, but reversed the dismissal of most of Plaintiffs' claims against Berkshire, and remanded the case to the District Court to litigate those claims.  *Id.*

On October 5, 2016, Plaintiffs amended their complaint to assert claims solely against Berkshire, alleging that Berkshire impermissibly pressured Acme into freezing all accruals of benefits under the Pension Plan, and prevented Acme from restoring to its required level the employer's matching contribution to the 401(k) Plan.  ECF 50.  The Complaint seeks equitable

---

[2] Berkshire acquired Justin Industries, which at the time wholly owned Acme.  ECF 50 ¶ 20. In a later restructuring Berkshire directly acquired all interests in Acme.

relief, including a declaration that the Merger Agreement amends the Plans, and an injunction unfreezing the Pension Plan, restoring the employer match of the 401(k) Plan, and preventing Berkshire from taking future action contrary to the terms of the Merger Agreement.  Berkshire again moved to dismiss, ECF 51, and on May 31, 2017, the Court denied Berkshire's motion. ECF 58.  Berkshire answered the Complaint on July 12, 2017, ECF 63.

On October 16, 2017, Plaintiffs filed a motion to certify the class under Fed. R. Civ. P. 23(a) and (b), ECF 73.  Before the motion could be fully briefed, however, certain discovery disputes arose concerning documents retained by Plaintiff Hunter when she separated from Acme, and the Court denied Plaintiffs' motion as moot without prejudice while those issues were being resolved, ECF 80.  Subsequently, Plaintiffs moved to proceed without class certification, ECF 93.  On January 23, 2019, the Court granted the motion and dismissed the class allegations in the Complaint, but reserved for later determination the extent of any notice to be given to the Plans' participants prior to any settlement or voluntary dismissal.  ECF 110.

**B.    Investigation and Analysis**

Prior to instigating suit, and throughout the course of the litigation and the parties' negotiations, Class Counsel worked with the Named Plaintiffs to investigate the facts, circumstances, and legal issues associated with the allegations and defenses in the action. Class Counsel's investigation included, inter alia, (a) inspecting, reviewing, and analyzing the Plans, the Merger Agreement, documents publicly available and/or produced by Defendants in litigation and discovery, or otherwise relating to Acme, Berkshire, and the actions of Acme and Berkshire; (b) reviewing, analyzing and researching the applicable law with respect to the claims asserted in this case and the possible defenses thereto; and (c) seeking expert advice on actuarial matters. Declaration of Gary A. Gotto in Support of Motion for Preliminary Approval of Class Action Settlement ("Gotto Decl."), ¶ 3; Ex. 3, App'x at 51.

4

During the course of the litigation and negotiations, the Named Plaintiffs collected and produced documents; reviewed and approved the complaints and other major filings; maintained contact with Class Counsel; stayed abreast of settlement negotiations; and advised on settlement of the litigation.  Plaintiff Hunter in particular was deeply involved in all phases of the case; provided information and extensive input on all filings before this Court and the Fifth Circuit Court of Appeals; she attended oral argument before both this Court and before the Fifth Circuit in New Orleans; attended the mediation in Los Angeles in person; and sat for a full day deposition.  Ex. 3 ¶ 4, App'x 51.

## C.   Discovery

Discovery commenced after denial of Berkshire's second motion to dismiss with an exchange of initial disclosures under Fed. R. Civ. P. 26(a) on August 3, 2017.  The parties negotiated a protective order and a procedure for the handling of electronically stored information.  Ex. 3 ¶ 5, App'x 51.

Plaintiff Judy Hunter had been the Chief Financial Officer of Acme, chaired the committees that administered both Plans, and had direct contact with Berkshire and Acme management over the issues that are the subject of the Complaint.  Declaration of Judy Hunter in Support of Plaintiffs' Motion for Class Certification ("Hunter Decl."), ECF 74 at Ex. 2 ¶¶ 3-5, 10. She had extensive knowledge of the facts underlying the Complaint, and was initially in possession of a large number of supporting documents.  However, in light of objections raised by Berkshire, and pursuant to agreement and the Court's order of July 24, 2018, ECF 102, all documents in Ms. Hunter's possession that stemmed from her employment with Acme were returned to Acme, subject to discovery in the ordinary course by Plaintiffs.

Plaintiffs responded to Berkshire's discovery requests and served their own.  Ex. 3 ¶ 6, App'x 51. Berkshire has produced over 1,700 documents comprising over 8,200 pages to date. *Id.* Berkshire deposed Plaintiff Judy Hunter in Phoenix, Arizona on May 21, 2019. *Id.* ¶ 7, App'x

51. Discovery was ongoing, with Berkshire continuing to produce documents and the parties negotiating the scheduling of depositions requested by Plaintiffs, when the parties agreed to settle. *Id.*

**D.    Mediation**

On May 7, 2019, pursuant to Court order, the parties jointly designated Robert Meyer of JAMS in Los Angeles, California, as mediator. ECF 114.  Mr. Meyer is highly experienced in mediating complex cases, in particular ERISA cases, and counsel for both Plaintiffs and Defendant had previously successfully mediated cases with him.  Ex. 3 ¶ 8, App'x 52.

The settlement negotiations took place over the course of three months.  The parties exchanged confidential mediation memoranda on July 2, 2019, and Plaintiff Judy Hunter and her counsel attended a day-long in-person mediation session in Los Angeles on July 9, 2019.  While the parties, through the mediator, exchanged proposals, they were unable to immediately reach a settlement.  However, they agreed to continue to work towards settlement, and in August 2019, at the mediator's request, Berkshire provided additional information to further inform the parties' negotiations and to assist the mediator in crafting a mediator's proposal.  The parties exchanged drafts of a proposed term sheet in August and September. Ex. 3 ¶ 9, App'x 52.

On October 10, 2019, after review and analysis of the additional information provided by Berkshire (with the assistance of Plaintiffs' actuarial expert); after extensive communications with and through the mediator; and after considering all relevant factors, the parties accepted a mediator's proposal and reached an agreement in principle to settle the case, memorializing the key terms in a term sheet, and began negotiating a definitive settlement agreement.  Ex. 3 ¶ 10, App'x 52.  The parties jointly notified the Court of the Settlement and, because the Settlement requires reinstatement of the class action allegations and approval as a class action settlement, moved for and were granted a stay of proceedings. ECF 124, 125.

The Settlement Agreement now before the Court, Ex. 1, App'x 1-36, is a comprehensive agreement based on the term sheet. It was executed by all parties on November 27, 2019. The Settlement is the result of protracted, lengthy arm's-length negotiations between the parties. The process was thorough, adversarial, and professional. Ex. 3 ¶ 11, App'x 52.

### III.    OVERVIEW OF SETTLEMENT TERMS

The Settlement provides benefits for all parties, including releases of claims, additional accrual of retirement benefits by members of the Pension Plan Settlement Class, and cash payments to members of the 401(k) Settlement Class. Its primary terms are summarized below.[3]

**A.    Proposed Settlement Classes.**   The Settlement Agreement calls for the certification of two Settlement Classes: The 401(k) Settlement Class, consisting of

> All participants and former participants in the Acme Brick Company 401(k) Retirement and Savings Plan who contributed to an account with the 401(k) Plan at any time between January 1, 2010 and December 31, 2013, together with their respective beneficiaries. Excluded from the 401(k) Settlement Class are participants and former participants for whom the employer's matching contribution between January 1, 2010 and December 31, 2013, was established by a collective bargaining agreement.[4] [Ex. 1 § 1.19, App'x 3]

and the Pension Plan Settlement Class, consisting of

> All participants and former participants in the Acme Brick Company Pension Plan who were employed by Acme on October 4, 2014, together with their respective beneficiaries. [Ex. 1 § 1.21, App'x 3]

**B.    Settlement Consideration to the Classes.**   Defendant has agreed to provide the following consideration in settlement:

1.   _Pension Plan Settlement Class._   Defendant will cause Acme to adopt an amendment to the Pension Plan providing for the recalculation of accrued benefits for Pension

---

[3] This description of the Settlement is only a summary. The governing provisions are set forth in Exhibit 1, App'x 1-36.

[4] For a small number of participants in the 401(k) Plan, the amount of the employer's matching contribution was governed by a collective bargaining agreement. ECF 50 ¶ 24 n.1. As this was independent of the restrictions in the Merger Agreement, no relief was requested in the Complaint on their behalf, and they are not part of the 401(k) Settlement Class. _Id._

Plan Settlement Class Members.  Each Pension Plan Settlement Class Member's accrued benefit will be adjusted so as to equal the benefit to which such Member would have been entitled had the effective date of the freeze of the Pension Plan benefit been July 15, 2017.  If a Pension Plan Class Member retired or terminated employment after October 4, 2014, but before July 15, 2017, that Member's benefits will only accrue until the date of their retirement or termination.  No Pension Plan Class Member's accrued benefit will be reduced on account of this adjustment.  Ex. 1 § 6.1.2, App'x 9.  Acme's actuary (using assumptions stated in the estimate) has estimated the value of these additional accruals to be approximately $9,402,000 (see § V.B.1.e, below).  An actuarial expert retained by Plaintiffs has confirmed the reasonableness of this estimate.

2.   401(k) Plan Settlement Class.  Defendant will cause Acme to distribute Seven Hundred Fifty Thousand Dollars ($750,000), allocated among the members of the 401(k) Settlement Class proportionately based on the employer match amounts made to the 401(k) Plan accounts of such Persons during 2010-2013.  Ex. 1 § 6.1.3, App'x 9-10.  If the Court approves case contribution awards aggregating up to $25,000 for the Named Plaintiffs as contemplated in § IV, below, the approved awards will be deducted before this allocation is made.

C.   **Releases**.  In exchange for the relief provided by the Settlement, the Action will be dismissed with prejudice (Ex. 1 § 2.4, App'x 6), and the Named Plaintiffs and the Settlement Classes will release Defendant and affiliated parties (the "Releasees," defined at Ex. 1 § 1.30, App'x 4) from all claims arising out of or related to the allegations of the Complaint (the "Released Claims," defined at Ex. 1 §§ 3.1, 3.2, App'x 7) except for claims for individual benefits or breach of the Settlement.

The Settlement also provides for Defendant, for itself and the Releasees, to release claims against the Named Plaintiffs, the Settlement Classes, and their counsel (Ex. 1 § 3.3, App'x 7).

D.   **Class Notice**.  Class Members will be sent a direct notice of the settlement and the Final Fairness Hearing ("Settlement Notice"). Ex. 1 § 2.2.3, App'x 5-6. A proposed form is

8

included as Exhibit 2, App'x 38-48.  The content and adequacy of the Class Notice are addressed in § VI. below.

## IV.     ATTORNEY'S FEES AND EXPENSES

Concurrently with filing Plaintiffs' motion for final approval of the Settlement, Plaintiffs' Counsel will apply for an award of reasonable attorneys' fees and expenses. Defendant has agreed to cause attorneys' fees and expenses awarded by the Court to be paid *in addition to* the amounts described in Section III(B), above.  Ex. 1 § 6.1.4, App'x 10. Berkshire has reserved the right to oppose the amount of the attorneys' fees and expenses award.

Class Counsel will separately request that the Court approve case contribution awards to the Named Plaintiffs, to be paid out of the $750,000 cash settlement to the 401(k) Settlement Class, of $15,000 to Judy Hunter and $5,000 each to Anita Gray and Bobby Lynn Allen, to compensate them for the time, effort, and risks they assumed in connection with this action. Berkshire has reserved the right to oppose that request.

The Settlement Agreement is not contingent on Court approval of any of fees, expenses, or case contribution awards that may be requested.

## V.     ARGUMENT

### A.     The Class Claims Should Be Reinstated Pursuant to Defendant's Written Consent

While this litigation has not been proceeding as a class action since January 2019 (*see supra* note 1), the Settlement Agreement contemplates that the class allegations previously dismissed will be reinstated, and the Settlement Agreement will be approved as a non-opt-out class action settlement pursuant to Fed. R. Civ. P. 23(b)(1) and/or (b)(2).  Ex. 1§ 2.2.2, App'x 5. There has been no determination adverse to class certification in this case, as the Court's January 23, 2019 Order simply dismissed the class allegations on Plaintiff's motion without making any class determinations.  ECF 110.  As set out in § V.B.2, below, the proposed Settlement Classes meet the certification requirements of Fed. R. Civ. P. 23(a) and (b)(1) and (2).

Pursuant to Fed. R. Civ. P. 15(a)(2), a party may amend its pleading with the opposing party's written consent.  Defendant has given its written consent to the amendment by signing the Settlement Agreement.  Because this amendment does not physically change the existing Amended Complaint (ECF 50), Plaintiffs request that the Court simply order the class allegations deemed reinstated, and have so provided in the draft order submitted herewith.  Ex. 1 at Ex. A, ¶ 1, App'x 19.

## B.      The Court Should Grant Preliminary Approval

Federal courts favor the voluntary resolution of litigation through settlement, particularly in class actions. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement"). The "gravamen of an approvable proposed settlement is that it be fair, adequate, and reasonable and is not the product of collusion between the parties." *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) (internal quotation marks omitted).

At the preliminary approval stage, the Court is not required to issue definitive findings regarding the fairness of the settlement, and need only make an initial determination that the proposed settlement is within the range of what may be found to be fair, adequate and reasonable, such that notice should be sent to the class. *See Manual for Complex Litigation* (Fourth) § 21.632 (2004); *accord*, *Glover v. Woodbolt Distribution, Ltd.,* No. H-12-2191, 2012 WL 5456361, at *1 (S.D. Tex. Nov. 7, 2012) ("[T]he settlement is within the range of possible final judicial approval sufficient to warrant sending notice to settlement class members"); *In re OCA, Inc. Sec. and Derivative Litig.*, No.  05¬2165, 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008) (preliminary approval standards not as stringent as final approval).

### 1.      The Settlement Satisfies the *Reed v. General Motors* Factors

In *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983), the Fifth Circuit articulated six factors relevant to approval of a class action settlement: (1) whether there is

10

evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs prevailing on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives and absent class members.  "When considering these factors, the court should keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc.*, No. 301-1754, 2003 WL 22976611 at *4, (N.D. Tex. Dec. 11, 2003). "[T]he court should not decide the merits of the action or attempt to substitute its own judgment for that of the parties." *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983). Here, all six factors favor approval of the Settlement.

### a.   No evidence of fraud or collusion.

The Settlement was reached through a Court-ordered mediation with the assistance of a nationally-renowned and experienced mediator of ERISA cases, Robert Meyer. Ex. 3 ¶ 8, App'x 52.  The negotiations were conducted at arm's length, both at an in-person mediation session and by remote communication for several months thereafter; ultimately both parties accepted a mediator's proposal. *Id.* ¶¶ 9-10, App'x 52. Accordingly, the first *Reed* factor strongly weighs in favor of approval of the Settlement, as there is no indication of any fraud or collusion in reaching the settlement. *Reed*, 703 F.2d at 172; *Billitteri v. Sec. Am., Inc.*, No. 3:09- 01568, 2011 WL 3586217, at *10 (N.D. Tex. Aug. 4, 2011) ("As for the first factor, there is no evidence that the settlement was obtained by fraud or collusion. On the contrary, this settlement was diligently negotiated after a long and hard-fought process that culminated in ultimately successful mediation[.]").

### b.   Complexity, expense and duration

The complexity of this ERISA case also favors approval of the Settlement. *See Mertens v. Hewitt Associates*, 508 U.S. 248, 262 (1993) (ERISA is "an enormously complex and detailed statute").  After five years of litigation, had the Parties rejected the mediator's proposal, the

Parties faced further discovery, motion practice (including summary judgment motions), and a lengthy trial. This would have placed a significant financial burden on the parties and a judicial burden for the Court. Moreover, a final decision may well have led to another appeal.  Although the Action was no longer proceeding as a class action, the equitable relief it seeks nevertheless has the potential to determine issues critical to other participants in the Plans – including that the Merger Agreement amended the Plans, and that Berkshire was in violation of them.  The Settlement  provides immediate relief to Class Members, and avoids potentially years of additional delay with an uncertain outcome. *See Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) ("The agreement also provides relief for the class sooner than continued litigation would.")

### c.      Stage of litigation and available discovery

This is plainly ***not*** a hastily negotiated settlement prior to substantial discovery.  The Parties mediated this action towards the close of discovery, after multiple extensions of both the discovery and mediation deadlines (*see, e.g.*, ECF nos. 106, 108, 111). Not only had there been substantial discovery, but Plaintiff Judy Hunter, by virtue of her position as CFO and chair of both Plans' administrative committees at Acme, had been at the center of the action when the critical events took place.[5] The case had been laid out in the first instance in robust motions to dismiss with extensive supporting documents. ECF 16 and 51. When the mediation commenced, the Parties "possess[ed] ample information with which to evaluate the merits of the competing positions." *Billitteri*, 2011 WL 3586217 at *11 (quoting *Ayers*, 358 F.3d at 369).

### d.      Probability of prevailing on the merits

Although Plaintiffs believe there is strong legal and factual support for their claims, there is always risk "inherent in taking any litigation to completion." *Turner v. Murphy Oil USA, Inc.*,

---

[5] Ms. Hunter's authority to use her knowledge gained through her position, independent of other evidence, may have been an issue at trial; however, there is no question that it informed her ability to analyze the strengths and weaknesses of the parties' positions.

472 F. Supp. 2d 830, 849 (E.D. La. 2007) (internal quotation marks omitted). Berkshire has raised numerous defenses that Plaintiffs would be required to overcome, either in response to a summary judgment motion or at trial. For example, in addition to proving that §5.7 of the Merger Agreement amended the Plans, Plaintiffs would have to establish that Berkshire's actions *caused* Acme to reduce the employer's matching contribution to 401(k) accounts, and *caused* Acme to institute a "hard freeze" of the Pension Plan.

Moreover, during the pendency of these proceedings, the status of two of the Plaintiffs changed. First, Judy Hunter separated from Acme on May 16, 2016, and thereafter was no longer a fiduciary of either Plan. Defendants contend that Ms. Hunter no longer has standing to pursue the claims that she brought in a fiduciary capacity. Second, Anita Gray retired on January 6, 2017 (the third plaintiff, Bobby Lynn Allen, had already retired when the case was filed). Berkshire contests Plaintiffs' standing to seek *any* prospective relief, such as the requested injunction prohibiting Berkshire from taking the same type of actions in the future; Berkshire argues that Plaintiffs, as retirees, could not themselves be affected by those future actions. If Berkshire was successful in this defense, Plaintiffs' claims for unfreezing the Pension Plan might not extend past the date of Anita Gray's retirement. Berkshire also contends that Plaintiffs' claims as to the 401(k) Plan are in the nature of damages and therefore not recoverable in equity, which could prevent any recovery by the 401(k) Class at all.

Plaintiffs believe they would prevail on the merits, but they are mindful of the obstacles presented by these defenses. And, indeed, the risk is amply illustrated by the fact that one of the original defendants has been dismissed, and that dismissal has been affirmed by the Fifth Circuit. This Settlement was reached in recognition of the risk further litigation poses.

### e. Range of possible recovery and certainty of damages.

The benefits of compromise outweigh the risks of pursuing a potentially greater, but uncertain, recovery. *See Reed*, 703 F.2d at 175 ("[U]ncertainty is a catalyst of settlement.");

*Cotton*, 559 F.2d at 1330 ("The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.") (internal quotation marks omitted).

Liability in this case is predicated on the Court concluding that the Merger Agreement amended both Plans, and that Berkshire then violated those Plans by causing Acme to reduce benefits.  Since the relief requested is equitable, its dollar value is incidental to the relief, flowing from the cost of rectifying the improper reduction of benefits.  If Plaintiffs had prevailed on all claims at trial, the dollar value of those outcomes would have been:

(a) as to the 401(k) Plan, restoration of approximately $600,000 per year in reduced employer match for each of the years 2010 through 2013, plus interest or foregone earnings thereon, estimated at approximately $1.2 million in total; and

(b) as to the Pension Plan, "unfreezing" as of October 4, 2014 through trial and potentially thereafter, with participants continuing to accrue benefits until they terminated employment with Acme or the Pension Plan was terminated in a manner not prohibited by the Merger Agreement.

Plaintiffs believe, given the litigation risks discussed in § V.B.1.d, that the settlement is fair and adequate.  The 401(k) Plan recovery represents over 31% of the amount by which the employer match was reduced for the years 2010-2013, and over 20% of the maximum potential recovery including interest.  The unfreezing of the Pension Plan for a period of over 34 months represents over 45% of the relief that would have been achieved if the Pension Plan had been unfrozen through a trial in mid-2020 (for example, unfreezing the Pension Plan through September 30, 2020, would have meant a period of up to 72 months of additional accruals for participants). While it is possible that the period of unfreezing could have extended past trial, it is also possible that the Pension Plan might be terminated even before trial in a manner not prohibited by the Merger Agreement.

14

Under these circumstances, accepting the substantial Settlement, in lieu of the difficult path toward "highest hopes," *see Cotton*, 559 F.2d at 1330, is fair and reasonable for the Settlement Class.[6]  The percentage dollar value recovered exceeds many recoveries in typical class action cases. *See Slipchenko v. Brunel Energy*, No. 11–1465, 2015 WL 338358, at *11 (S.D. Tex. Jan. 23, 2015) (approving $375,000 settlement of potential $3 million ERISA recovery, or approximately 12.5%); *Stott v. Capital Fin. Services, Inc.*, 277 F.R.D. 316, 345, n. 19 (N.D. Tex. 2011) (approving class settlement "estimated at about 2 to 3 percent of the each individual class member's total losses" based on the "risks involved in the litigation"); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (recovery of 9 percent was reasonable).

### f.      Opinions of counsel and class representatives.

Finally, "the value of the assessment of able counsel negotiating at arm's length cannot be gainsaid." *Reed*, 703 F.2d at 175. If competent counsel determines that a settlement is in the best interest of a class, "the attorney's views must be accorded great weight." *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978). Plaintiffs' counsel in this case are experienced in ERISA litigation, and have significant additional class action litigation experience as well.  Ex. 3 ¶ 12 and Ex. A, App'x 56-73.  Plaintiffs' counsel's opinion that the Settlement is fair, reasonable, and adequate—along with approval of each Class Representative—weighs strongly in favor of granting preliminary approval.

### 2.      The Proposed Settlement Classes Satisfy the Requirements for Certification Pursuant to Rule 23 of the Federal Rules of Civil Procedure

Named Plaintiffs request that the Court preliminarily certify two classes for settlement purposes only, under Fed. R.Civ P. 23(a) and 23(b)(1) or 23(b)(2).  Pursuant to Rule 23(c)(1)(B),

---

[6] *See Purdie*, 2003 WL 22976611, at *7 (approving class settlement where class members received "considerably less" than if they would have succeeded on all claims, in light of the "risks and uncertainty they would face if the case were to proceed to trial").

Named Plaintiffs Hunter, Gray and Allen seek to represent the 401(k) Settlement Class (defined *supra* § III(A)(1), and Named Plaintiffs Hunter and Gray seek to represent the Pension Plan Settlement Class[7] (*id.*)

"To obtain class certification, parties must satisfy Rule 23(a)'s four threshold requirements, as well as the requirements of Rule 23(b)(1), (2), or (3)." *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 345 (5th Cir. 2012) (citation omitted). The Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy are readily satisfied here.

> **a.    Rule 23(a)(1): The Members of the Classes Are So Numerous That Joinder of All Parties Is Impracticable.**

Rule 23(a)(1) "imposes no mechanical rules," but "turn[s] instead on the practicability of joining all class members individually," *Watson v. Shell Oil Co.*, 979 F.2d 1014, 1022 (5th Cir. 1992).  A class numbering in the hundreds is sufficiently numerous to render joinder of all parties impracticable. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (explaining that a class of 100 to 150 generally satisfies the numerosity requirement); *see also* 1 *Newberg on Class Actions* § 3.05 (2d ed. 1985) (recognizing that a class with over 40 members is presumed to satisfy numerosity). Here, as of the filing of the Action, there were approximately 1,558 individual participants in the Pension Plan, and approximately 1,010 individual participants in the 401(k) Plan.[8] The sheer size of the proposed Classes makes joinder impracticable.  Rule 23(a)(1) is satisfied.

---

[7] Named Plaintiff Allen is not a member of this class because he had retired before the Pension Plan was frozen.  Declaration of Bobby Lynn Allen in Support of Plaintiffs' Motion for Class Certification ("Allen Decl."), ECF 74 at Ex. 4.

[8] ECF 50 ¶ 60. While some Class members, like Plaintiff Allen, are members of only one Class, there is substantial overlap between the Pension Plan Settlement Class and the 401(k) Plan Settlement Class, as many Class members participated in both Plans during the time they were affected by Berkshire's alleged wrongful acts.

b.      **Rule 23(a)(2): Common Questions of Law and Fact Apply to the Classes.**

The commonality requirement is met if there exists a *single* legal question which "affect[s] all or a significant number of the putative class members." *Lightbourn v. Cty. of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997). "The threshold of 'commonality' is not high . . . [T]he rule requires only that resolution of the common questions affect all or a substantial number of the class members." *Jenkins v. Raymark Indus., Inc*., 782 F.2d 468, 472 (5th Cir. 1986). (citations omitted) Indeed, "[e]ven a single [common] question' will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (citation omitted).

Common questions of law and fact include whether the Merger Agreement amended the Plans, and whether Berkshire caused Acme to reduce benefits in violation of the Merger Agreement by (a) causing Acme to freeze benefit accruals of members of the Pension Plan Settlement Class, and (b) causing Acme to reduce employer contributions for members of the 401(k) Plan Settlement Class, thus violating the terms of the Plans and ERISA. Rule 23(a)(2) is satisfied.

c.      **Rule 23(a)(3):  Plaintiffs' Claims Are Typical of the Classes.**

Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Typicality, like commonality, does not impose a high threshold. *Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir.1993). The requirement is satisfied if there is "similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent." *Lightbourn*, 118 F.3d at 426.

The claims of the representative parties here are typical of the two Settlement Classes' claims because they are all based on Berkshire's alleged wrongful conduct, and the members of the Settlement Classes were similarly affected by such conduct.  Both Settlement Classes seek, *inter alia*, a declaration that § 5.7 of the Merger Agreement amended the Plans, and that

17

Berkshire then caused Acme to take actions in violation of that amendment, including freezing the accrual of rights under the Pension Plan and reducing employer matching contributions under the 401(k) Plan. ECF 50 ¶¶ 74-78. Thus, Plaintiffs' claims are typical of both Classes.

  **d.**  **Rule 23(a)(4):  Plaintiffs Will Adequately Protect the Interests of All Class Members.**

  To satisfy Rule 23(a)(4)'s requirement that Plaintiffs "fairly and adequately protect the interests of the class," Plaintiffs must show that (1) the class representatives share common interests with the class members, and (2) Plaintiffs' counsel must be qualified to vigorously pursue the interests of the class. *Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1973). In examining whether class representatives share common interests with the proposed class members, as long as the proposed representatives have a sufficient stake in the outcome of the litigation and are united in asserting a common right, then the class members' interests are aligned. *Mullen*, 186 F.3d at 625-26 (finding that the class will be adequately protected "because the Named Plaintiffs' interests are identical to the interests of the proposed class" with respect to the legal claims being made).

  These requirements are satisfied here, where Plaintiffs assert common claims seeking declaratory and injunctive relief under ERISA, and where there are no conflicts between Plaintiffs and the Classes with respect to the relief they seek. In addition, each of the Plaintiffs has an interest in one or both of the Plans, and is also committed to vigorously litigating this matter on behalf of the Classes they seek to represent. Plaintiffs have shown their commitment to prosecuting this action, as reflected by their successful appeal of the initial dismissal of their claims in 2015 and subsequent defense of their amended complaint.

  The Fifth Circuit also "mandates an inquiry into the zeal and competence of the representatives' counsel and into the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of the absentees". *Horton v.*

*Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir.1982), *cert. denied*, 463 U.S. 1207 (1983). As set forth in more detail below, Plaintiffs' Counsel are highly qualified, as they have substantial experience in class action matters in general and with respect to ERISA class cases in particular. Keller Rohrback is one of America's leading law firms handling retirement and employee benefit plan litigation. *See* Ex. 3 Ex. A, App'x 57-73.  The firm is also regularly appointed as lead counsel in highly complex ERISA matters.[9] *Id.* Thus, the requirements of Rule 23(a)(4) are satisfied here.

### 3.    The Classes Satisfy the Requirements of Rule 23(b)(1) and (b)(2)

#### a.    Rule 23(b)(1)(B):  Individual Actions Would Create Inconsistent Adjudications or Be Dispositive of the Interests of Absent Members

A class may be certified under Fed. R. Civ. P. 23(b)(1) if, in addition to meeting the requirements of Rule 23(a), the prosecution of separate actions by individual class members would as a practical matter be dispositive of the interest of absent members.  Fed. R. Civ. P. 23(b)(1)(B).  "[C]ertification pursuant to Rule 23(b)(1) is 'especially helpful in ERISA cases where a defendant provides unitary treatment to all members of a putative class and where litigation of some class members' rights could be implicated in suits brought by other class members.'" *Cottillion v. United Ref. Co.*, No. 09-140, 2013 WL 5936368, at *6 (W.D. Pa. Nov. 5, 2013) (citation omitted).

This test is met here because the Action will determine whether Berkshire must provide relief for its alleged violations of § 5.7 of the Merger Agreement to all Class Members collectively or to none of them at all. Accordingly, this lawsuit will be "dispositive of the interests of the other [class] members." Fed. R. Civ. P. 23(b)(1)(B). Moreover, claims that seek injunctive and declaratory relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), as Plaintiffs allege here, are routinely certified as classes pursuant to Rule 23(b)(1)(B). *See Lyons v. Ga-Pac.*

---

[9] *See Praise from the Courts*, http://www.krcomplexlit.com/praise-from-the-courts/ (last visited Dec. 3, 2019).

*Corp. Salaried Emps. Ret. Plan,* 221 F.3d 1235, 1240 (11th Cir. 2000) (certifying ERISA

§ 502(a)(3) class where defendants used an improper method of paying lump sum cash

distributions under an ERISA plan); *Hirt v. Equitable Ret. Plan for Emps*, 450 F. Supp. 2d 331,

334 (S.D.N.Y. 2006) (referencing certification of ERISA § 502(a)(3) class seeking equitable and

declaratory relief); *Del Rosario v. King & Prince Seafood Corp.*, Nos. 204-036, 205-044, 2009

WL 10674175, at *5 (S.D. Ga. March. 3, 2009) (certifying ERISA § 502(a)(3) class where

plaintiffs sought rescission from defendants' violation of a consent rule in an ESOP).

> **b.      Rule 23(b)(2):  Defendant Has Acted on Grounds Generally Applicable to the Classes and Relief for the Classes as a Whole is Appropriate**

A class may be certified under Federal Rule of Civil Procedure 23(b)(2) if "the party

opposing the class has acted or refused to act on grounds that apply generally to the class, so that

final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a

whole[.]"  Fed. R. Civ. P. 23(b)(2).  Here, Plaintiffs allege that Defendant failed to comply with

the Plans, as amended by the Merger Agreement, and with ERISA, on a class-wide basis.

Specifically, Plaintiffs allege that Defendant caused Acme to freeze accrual of all Pension Plan

Class Members' benefits under the Pension Plan (ECF 50 ¶ 91), and caused Acme to reduce the

employer's matching contribution for all 401(k) Class Members (*id*. ¶ 89).

Although Berkshire denies the allegations of the Complaint and contends that defenses

exist for every claim, Plaintiffs' allegations, if proven, would establish harm to each of the

Settlement Classes as a group.  As a result, certification of the proposed class under Rule

23(b)(2) is also appropriate in this ERISA action.

Federal Rule of Civil Procedure 23(g) requires that the Court examine the capabilities

and resources of class counsel.  Class Counsel have explained above the claims brought in this

action, and the time and effort already expended in connection with this litigation.  Moreover,

Class Counsel are among the leading litigators of ERISA actions on behalf of plaintiffs.

**C.      Plaintiffs Should Be Appointed As Class Representatives**

The named Plaintiffs are participants in one or both of the Plans. Plaintiff Hunter was, until May 2016, Acme's Chief Financial Officer and a member of both the 401(k) Committee and the Pension Committee, and is also a participant of both Plans. Hunter Decl. at ¶¶ 3-4. Plaintiff Gray was Assistant Controller of Acme until January 2017, and is a participant in both Plans. Declaration of Anita Gray in Support of Plaintiffs' Motion for Class Certification ("Gray Decl."), ECF 74 Ex. 3 at ¶¶ 3-4. Plaintiff Allen is a retired former employee of Acme, and was a participant in the 401(k) Plan during the period of underfunding. Allen Decl. ¶¶ 3-4.

Because the assets of both Plans are held in trust for the benefit of all participants in that Plan, Plaintiffs have a right to recover on behalf of the Plans to ensure compliance with ERISA in all respects. Plaintiffs are represented by attorneys with extensive experience in ERISA litigation. Counsel undertook this Action on a contingency fee basis, including paying for all reasonable out-of-pocket costs, and have the resources to do so.  Further, Plaintiffs seek appointment as Class Representatives to represent all of the Plans' participants and beneficiaries in order to obtain the necessary relief. Accordingly, Plaintiffs are adequate representatives of the Classes they seek to represent.

**D.      Keller Rohrback Should Be Appointed As Class Counsel.**

Pursuant to Rule 23(g)(3), the undersigned request appointment as Class Counsel. Keller Rohrback is highly experienced in class cases and has specific expertise in ERISA matters.

In appointing class counsel, the court considers four factors: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).

Keller Rohrback took substantial steps in investigating and bringing this action against Berkshire as reflected by the time they spent in preparing the original complaint and the years they have spent litigating this case to this point, including the Fifth Circuit appeal. Counsel have also reviewed and analyzed a considerable number of documents, including a substantial number of Plan-related documents, in preparing both the original and amended complaints. *See* ECF Nos. 1, 50. Substantial investigations into the facts and legal theories of a case, as Counsel have done here, is a significant factor in determining class counsel. *See, e.g., Duquum v. Scottrade, Inc.*, No. 4:15-1537, 2016 WL 1700427, at *2 (E.D. Mo. Apr. 28, 2016) (finding that the complaints filed by the attorneys requesting to be lead counsel demonstrated they had "sufficiently and diligently investigated the facts and claims alleged by the plaintiffs.")

Keller Rohrback also satisfies the second and third Rule 23(g) factors – experience handling class actions, complex litigation, and the types of claims asserted in the action, and counsel's knowledge of the law. Keller Rohrback has significant experience handling class actions and other complex litigation, which weighs heavily in favor of appointing them to serve as Class Counsel. Keller Rohrback is a national leader in class action litigation and has a premier ERISA class action practice, as reflected by the broad array of ERISA cases they have handled and the substantial recoveries on behalf of ERISA plan participants and beneficiaries they have achieved. Ex. 3 ¶ 12 and Ex. A, App'x 56-73.  The firm has also been appointed lead or co-lead counsel in ERISA class action cases where contested leadership petitions were filed. And Keller Rohrback has been at the forefront of many favorable and groundbreaking decisions in the area of company stock and other ERISA class action cases. The firm also has offices nationwide and its 70 attorneys include accountants, economists, computer technology experts, and former prosecuting attorneys. *Id.*

Keller Rohrback also retained the services of highly experienced local counsel Mark C. Hill to assist it in the efficient prosecution of this case, and upon his retirement, that role has

been filled by another highly experienced local counsel, Matthew Bobo. Mr. Hill has served as lead counsel, as well as supervised outside counsel when he was the general counsel of Tandy Corporation, in complex litigation matters in numerous district courts around the country, including the Northern District of Texas. Mr. Bobo has extensive experience as trial counsel in commercial and individual litigation in state, district and appellate courts in the Northern District of Texas and throughout the country.

Finally, the firm has sufficient financial resources available to represent the two Classes and to litigate large cases for years. For example, Keller Rohrback litigated for years before it was remunerated for fees and expenses in *In re Enron Corp. ERISA Litigation*, MDL No. 02-1446 (S.D. Tex.). Thus, Plaintiffs respectfully submit that based on the four factors of Rule 23(g), Plaintiffs' Counsel are best able to represent the interests of the Plaintiffs and the Classes they seek to represent and should be appointed as Class Counsel in this matter.

## VI.   PROPOSED CLASS NOTICE

In addition to reviewing the substance of the Parties' Settlement Agreement, the Court must ensure that notice is sent in a reasonable manner to all class members who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice proposed here.

Defendant, at Defendant's expense, will cause a Settlement Administrator (Bank of America or other administrator reasonably acceptable to Plaintiffs, Ex. 1 ¶ 1.32, App'x 4) to deliver the Settlement Notice (Ex. 2, App'x 38-48) to the Settlement Classes.  Ex. 1 ¶ 2.2.3, App'x 5-6.  Notice will be given by U.S. Mail or email to the last known physical and/or email address for participants in the Plans and, for any deceased participants, their designated beneficiaries, in the possession of Plans' current record-keeper (which, because of ERISA notice requirements, are comprehensive and up-to-date). *Id.* Notice by mail is presumptively

23

reasonable, *see Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); notice by email has been approved as part of a class notice program, *Slipchenko*, 2015 WL 338358, at *5.

The content of the Settlement Notice is also reasonable. It "present[s] a fair recital of the subject matter and of the proposed terms and … give[s] the class an opportunity to be heard." *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 429–30 (5th Cir. 1977). The Settlement Notice provides information to the Settlement Classes regarding, among other things: (1) the nature of the claims; (2) the scope of the Settlement Classes; (3) the terms of the Settlement; (4) that Settlement Class Members do not have the right to opt out of the Settlement; (5) Settlement Class Members' right to object to the settlement and the deadline for doing so; (6) the class-wide release; (7) the identity of Class Counsel and the amount and source of compensation they will seek in connection with the Settlement; (8) the date, time, and location of the final approval hearing; and (8) Settlement Class Members' right to appear at the final approval hearing. Exhibit 2, App'x 38-48.

To the extent that Class Members would like more information about the Settlement, Class Counsel will establish a Settlement Website on which it will post several documents (or links to documents) relating to the case, including this motion, the operative Complaint, the Settlement Agreement and exhibits thereto, the Settlement Notice, Class Counsel's Motion for Attorneys' Fees and Expenses (when filed), the Class Representatives' Motion for Case Contribution Awards (when filed), any Court orders related to the Settlement; and any amendments or revisions to these documents. In addition, Class Counsel will establish a toll-free telephone line and dedicated email address to receive and respond to questions.

This notice program fully meets the requirements of Rule 23 and due process, and should be approved. *See In re 2014 Radioshack Erisa Litig.*, No. 4:14- 00959, 2016 WL 6561597, at *3 (N.D. Tex. Jan. 25, 2016) (O'Connor, J.) (approving class notice plan).

## VII.    PROPOSED FINAL HEARING SCHEDULE

Plaintiffs propose that the Court adopt the following schedule to allow adequate time for dissemination of the Class Notice and opportunity for Class Members to respond:

| Event | Time for Compliance |
|---|---|
| Deadline for CAFA Notice to be Served by Defendant | 10 days after filing the Preliminary Approval Motion |
| Deadline for Mailing of Class Notice and Posting Class Notice to Website | 30 days after entry of the Preliminary Approval Order |
| Deadline for Filing Plaintiffs' Motion for Final Approval, Attorneys' Fees and Expenses, and Case Contribution Awards for Named Plaintiffs | 60 days prior to the Proposed Final Approval Hearing |
| Deadline for the Settlement Class to Comment upon or Object to the Proposed Settlement | 25 days prior to the Proposed Final Approval Hearing |
| Deadline for Filing Plaintiffs' Reply, and for the Parties to Respond to Comments or Objections | 7 days prior to the Proposed Final Approval Hearing |
| Proposed Final Approval Hearing | 100 days after entry of the Preliminary Approval Order |

## VIII.   CONCLUSION

Plaintiffs respectfully request that the Court preliminarily approve the Settlement, provisionally certify the Settlement Classes, conditionally appoint the undersigned as Class Counsel and the Plaintiffs as the Class Representatives, order dissemination of notice to Settlement Class Members, set a date for the Final Approval Hearing, and grant such other and further relief as the Court may deem appropriate.  A proposed form of order granting preliminary approval, in the form attached as Exhibit A to Exhibit 1, App'x 18-28, is submitted herewith.

RESPECTFULLY SUBMITTED this 30th day of December, 2019.

> _/s Gary A. Gotto_
> Gary A. Gotto, Arizona Bar No. 007401
> (*pro hac vice*)
> Christopher Graver, Arizona Bar No. 013235
> (*pro hac vice*)
> KELLER ROHRBACK L.L.P.
> 3101 North Central Avenue, Suite 1400
> Phoenix, Arizona 85012
> Tel: (602) 248-0088
> Fax: (602) 248-2822
> ggotto@kellerrohrback.com
> cgraver@kellerrohrback.com
>
> David J. Ko, Washington Bar No. 38299
> (*pro hac vice*)
> KELLER ROHRBACK L.L.P.
> 1201 Third Avenue, Suite 3200
> Seattle, WA 98101
> Tel: (206) 623-1900
> Fax: (206) 623-3384
> dko@kellerrohrback.com
>
> Matthew W. Bobo, State Bar No. 24006860
> Law Office of Matthew Bobo, PLLC
> 4916 Camp Bowie Blvd.
> Fort Worth, Texas 76107
> 817-529-0774 Phone
> 817-698-9401 Fax
> mbobo@mwblawyer.com
>
> Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on December 30, 2019, all counsel of record were served with a copy of the foregoing via the Court's ECF system pursuant to Local Rule 5.1(d).

> _/s Christopher Graver_

4815-1028-0366, v. 8

26